**STATE of Missouri, Respondent,**

v.

**Adrian DANIELS, Appellant.**

**No. 47411.**

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1960.

Wilson Gray, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Fred L. Howard, Grover C. Huston, Asst. Attys. Gen., for respondent.

WESTHUES, Judge.

Defendant Daniels was convicted in the Circuit Court of the City of St. Louis, Missouri, of stealing from a person. His punishment was assessed by a jury at four years' imprisonment in the State Penitentiary. The information charged the defendant with robbery in the first degree. Defendant's motion for new trial was overruled. He appealed from the judgment entered against him.

Defendant has not filed a brief in this court. In his motion for new trial, he has preserved only one question for our review, that is, the sufficiency of the evidence to sustain the verdict of the jury. Three other assignments in the motion are insufficient under our rules. For example: No. 4 reads: " 'The verdict of the jury is contrary to the evidence and to the law and is evidence of bias and passion on part of the jury.' "

Defendant testified in the case. He admitted having been convicted of five separate theft or larceny offenses before this charge was filed. He had completed serving his sentences on these convictions.

The evidence offered by the defendant as to what occurred at the time the alleged offense was committed was much like that offered by the State except in two respects which we shall note later in this opinion.

The victim of the crime, be it theft or robbery, was George Hart who was employed by the Chapman Ice Cream Company. On October 11, 1958, he had made a delivery of ice cream for which he had been given a receipt. Hart had this receipt, a paycheck stub, and forty-two dollars in currency in his possession on the evening of October 11 in question. Hart and the defendant had known each other for several years. During the evening in question, Hart and the defendant had taken some drinks together. Other facts and circumstances shown in evidence may be omitted as they do not have a material bearing on the question before us. Hart testified that sometime after he left the defendant, Hart and one Leon Lewis were walking together in the 3900 block on Easton Avenue when he heard someone come up from behind them and strike Lewis over the head; that Lewis fell to the ground; that as he (Hart) turned, he saw the defendant; that thereupon defendant struck Hart. Hart stated further that the blow knocked him "silly" and caused him to fall; that he vaguely remembered defendant saying to him, " 'I got to keep by the girl.' " Hart testified that he felt defendant reaching in his pocket.

John W. House, a private watchman, testified that he was driving along on Easton Avenue at about nine o'clock on the evening of October 11 and "I seen a fellow knock another fellow down." House's testimony was that he stopped his car and held the defendant in custody until police arrived; that he saw defendant knock Hart down three times and "The third time he knocked him down, he didn't get up. I seen him go into his pockets." When the police arrived, defendant had a roll of currency in his possession and inside this roll were the receipt for the ice cream and Hart's paycheck stub.

The defendant testified that on the evening in question, he went to Vandeventer Avenue where his girl friend lived which was only a block or so from the point where the trouble occurred and saw Hart talking to his (Daniels') girl; that he went to the door after Hart left but the girl would not come out to talk to him; that thereafter he went back to a tavern on Easton. What occurred, as explained by the defendant, was as follows:

"A. Sure. And this fellow and him were walking out of the tavern. They came out of the tavern and was going west on Easton.

"Q. Then what did you do? A. I walked down the street behind them, and I called him, and when I called him, this other fellow that was with

him, he turned around, and put his hands in his pockets, and when he put his hands in his pockets, I hit him. Well, he fell, and got up, and run; and that's when I asked George about the girl. George said he didn't say anything to the girl. He didn't say like that. He called her something else. He said he didn't say anything to her. And I told him he did. And he started cursing, and he put his hands in his pocket; and I hit him. I hit him the first time; and he fell; and I bent down, and picked him up; and he kicked me in the stomach; and I picked him up, and hit him again. He fell beside the wall. And the third time I hit at him, I hit the wall and I didn't hit him. I hurt my hand. And when I hurt my hand, I grabbed my hand, and was feeling the wrist broke, or anything; and that's when I seen the money on the ground.

"Q. Now, do you recall you picked it off to the south walk—that is, the south side of the sidewalk? A. That was there.

"Q. About how many feet back up in there? A. This is about three feet off the sidewalk.

"Q. About how wide is this? A. It's about eight feet—about eight feet— nine feet wide.

"Q. And where was this laying? A. It was laying, I would say, about four—five inches off the sidewalk.

"Q. And you picked the money up? A. I picked the money up and started to walk away.

"Q. About how far did you walk? A. Oh, I would say between six to eight foot.

"Q. Six to eight feet from where you were fighting? A. Yes.

"Q. And then what happened? A. This fellow—this guard, he pulled up besides me and told me to go back to where this fellow was."

Hart denied that he struck the defendant; denied that he talked to defendant's girl; denied that he and the defendant got into a fight over the girl.

It will be noted that defendant's version of what occurred differed from the State's version only in two material respects: (1) Defendant said he found the money on the ground while the State's evidence was that defendant took the money from Hart's pocket. (2) The other variance in the evidence was concerning the reason for the assault by the defendant upon Hart. Defendant claims the fight was over a girl and that Hart struck him several times. The State's evidence justified a finding that defendant struck Hart for the purpose of taking Hart's money.

It is evident that the State introduced substantial evidence from which a jury was justified in finding defendant guilty of stealing money from the person of Hart. We, therefore, rule that defendant's contention that the evidence was insufficient is without merit.

We have reviewed matters required to be examined under S.Ct. Rule 28.02, 42 V.A.M.S. The information, verdict, and sentence are in proper form. Defendant was accorded allocution and was personally present with his attorney when the court pronounced judgment.

The judgment is affirmed.

All concur.